Law Clerk: Vivian Center

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **Tri-V's Homes Inc., Victorio Guico, Regina Guico, Clien Lester Guico, Lesllyn Guico, Liezel Cuico, and Vic Guico, Jr., Plaintiffs,** | CASE No. CV 08-06954 RGK (JCx) |
| **v.** | **Order and Judgment RE:** |
| **United States Department of Homeland Security and United States Citizenship and Immigration Services, Defendants** | **Court Trial** |

I. **INTRODUCTION**

On October 22, 2008, Plaintiffs Tri-V's Homes, Inc. ("Tri-V"), Victorio Guico ("Guico"), Regina Guico, Clien Lester Guico, Lesllyn Guico, Liezel Guico and Vic Guico, Jr. (collectively, "the Guico Family")(inclusively, "Plaintiffs") filed suit against Defendants United States Department of Homeland Security and United States Citizenship and Immigration Services (collectively, "Defendants" or

"CIS"). Plaintiffs allege that Defendants abused their discretion in denying Plaintiffs' applications to extend their L-1A and L-2 visas. By way of the Complaint, Plaintiffs seek declaratory judgment: (1) adjudging and declaring that the actions by Defendants in denying Plaintiffs' applications were unlawful; (2) ordering that the L-1A and L-2 visa petitions be approved from May 15, 2007 through May 14, 2010; (3) concluding that the evidence in the administrative record shows that Guico's duties with Tri-V are executive in nature and that the duties he carried out in the Philippines were equally executive/managerial in nature, and that Tri-V is a 70% owned subsidiary of a Philippines company; and (4) grant attorney's fees and other further relief as the Court deems just and proper.

The Court conducted a bench trial. The matter was heard on trial briefs submitted by both parties. The Court has reviewed the administrative record and considered all the arguments and evidence presented. Based on the credible evidence and the reasonable inferences drawn from that evidence, the Court finds that Defendants did not abuse their discretion in denying Plaintiffs' application.

## II.  **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This opinion serves as the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure. Any finding of fact that actually constitutes a conclusion of law is adopted as such, with the converse also being true.

### A.  **Findings of Fact**

1.   Plaintiffs are citizens of the Philippines.(Certified Administrative Record ("CAR")at 1165-1180.)

2.   Tri-V is a U.S. company that provides residential care for the elderly. (CAR 328.) As of November 2004, Tri-V had been operating in the United States for less than one year. *Id*.

3.   On November 26, 2004, Tri-V filed an L-1A intercompany transferee petition on behalf of Guico. (CAR at 1165.) On May 17, 2006, CIS approved the application, with a validity date from May 15, 2006 through May 14, 2007. *Id*.

4.   At the same time, CIS accorded the Guico Family L-2 nonimmigrant dependent status based on Guico's approved L-1 status. (CAR 1165-1180.)

5.   On April 24, 2007, Tri-V filed an I-129 petition ("Petition") seeking to continue the employment of Guico and extend Guico's L-1 status, as well as the status of the Guico Family. (CAR at 326-333.)

6.   Because the Guico Family have L-2 nonimmigrant status based on Guico's L-1 status, the determination of the application to extend Guico's status is determinative of the Guico Family's status. (Supplemental CAR at 4.)

7.   The Petition indicates that Guico has been the President of Tri-V since 2006, responsible for the overall management and direction of the company and its operation. (CAR at 331.) The Petition also states that Guico served as the General Manager of Tri-V's Philippine parent company, Tri-V's Marketing, Inc. ("Tri-V Marketing") from 1986 to 2004. *Id*.

8.   Tri-Vi Marketing primarily trades goods such as grocery products on a wholesale and retail basis. (CAR at 631.)

3

9.   The Petition states that Tri-V Marketing owns 70% of Tri-V, and that this relationship existed during the preceding one-year period of Guico's employment with Tri-V Marketing. (CAR at 332.)

10.  With its Petition, Tri-V provided the following additional supporting materials:

   a.   A letter, dated April 19, 2007, stating: (1) Tri-V Marketing owns 70% of Tri-V; (2) Guico is responsible for translating the company's plan of operation into an actual operating business of running facilities that provide residential care for elderly people; (3) due to Guico's efforts, Tri-V acquired two residential facilities in California in less than one year; (4) Guico initiated the hiring of five new employees; (5) due to Guico's efforts, Tri-V expects that Guico will move the company into the next level of performance. (CAR at 339-340.)

   b.   Tri-V's Articles of Incorporation, which reflects Tri-V's authority to issue 100 shares of common stock. (CAR at 341-342.)

   c.   Stock certificate certifying that Tri-V Marketing owns 70 of the 100 issued shares. (CAR at 343.)

   d.   Stock information sheet stating that Guico owns 70% of Tri-V Marketing. (CAR at 600.)

   e.   An organizational chart showing Guico as the President/General Manager of Tri-V. (CAR at 351.)

   f.   Tri-V's 2006 IRS Form 1120A and California Form 100 Tax Returns. (CAR 356-418.)

   g.   Commercial leases signed by Giuco as President, on behalf of Tri-V. (CAR at 420-426.)

1          h.    Other documentation of Tri-V's day-to-day business

2                operations. (CAR 427-584.)

3    11.  On June 18, 2007, CIS issued a Request for Evidence ("RFE")

4         requesting that Tri-V submit evidence to show that Tri-V

5         Marketing paid for Tri-V. (CAR 85.) Specifically, CIS requested a

6         copy of the original wire transfers from Tri-V Marketing and any

7         other evidence, including cancelled checks or deposit receipts

8         showing the monetary amounts for the stock purchase. *Id*. The RFE

9         also stated that the originator(s) of the deposited or wired

10        money must be clearly shown and verifiable by name, with full

11        address and phone/fax number. (CAR at 86.) Additionally, the RFE

12        requested a copy of Tri-V's Notice of Transaction Pursuant to

13        California Corporations Code, Section 25102(f), showing the total

14        offering amounts of Tri-V Marketing relating to the purchase of

15        Tri-V. *Id*.

16   12.  The RFE also requested further information about Guico's

17        managerial position at Tri-V, including a more detailed job

18        description and the percentages of time spent on each job duty.

19        (CAR at 86.) Additionally, the RFE requested further information

20        on whom Guico directs, including their job title and position

21        description. *Id*. The same information was requested with respect

22        to Guico's job at Tri-V Marketing. *Id*.

23   13.  On September 4, 2007, Tri-V submitted the following documents in

24        response to CIS's request regarding Guico's employment with Tri-V

25        Marketing: (1) payroll statements showing Guico as the General

26        Manager of Tri-V Marketing from October 2002 to December 2004

27        (CAR at 93-120); (2) block and line organizational charts showing

28        that, as General Manager, Guico was in charge of all operations

1    of Tri-V Marketing (CAR at 122-123); (3) a list of Tri-V's five
2    employees; and (4) Plaintiffs' counsel's summary of Guico's
3    responsibilities at Tri-V Marketing (CAR at 88).
4  14.  On September 4, 2007, Tri-V submitted the following documents in
5    response to CIS's request for evidence that Tri-V Marketing had
6    paid for the stock ownership of Tri-V: (1) a certification from
7    Tri-V Marketing's operation manager that Guico and Regina Guico
8    were each provided a $6,000 trip budget to the United States in
9    July 2004 (CAR at 127); (2) a statement by Plaintiffs' counsel
10    that purchase of the 70% common stocks were made with $10,000 in
11    cash that Guico and Regina Guico brought with them from the
12    Philippines (CAR at 89); (3) a bank statement showing a $10,000
13    deposit into Tri-V's bank account on November 2, 2004 (CAR at
14    125); and (4) bank records showing that, from March 2006 to
15    November 2006, Tri-V Marketing wire transferred $54,975 to Tri-V
16    (CAR at 138-143).
17  15.  In response to CIS's request regarding Guico's duties at Tri-V,
18    Plaintiffs' counsel's September 4, 2007 letter summarized Guico's
19    responsibilities at the company. (CAR at 89-90.)
20  16.  On November 5, 2007, CIS issued a Notice of Decision denying  the
21    Petition for the following reasons: (1) Tri-V did not establish
22    that Guico had been, and would be, employed in an executive or
23    managerial position; and (2) the evidence did not establish that
24    Tri-V and Tri-V Marketing were qualifying organizations because:
25    (a) the documents failed to demonstrate that Tri-V Marketing
26    contributed cash funds to purchase Tri-V's common stock, and (b)
27    the submitted 2006 Federal Tax Return did not reflect that Tri-V
28    had issued stock. (CAR at 29-37.)

17. On December 4, 2009, Tri-V filed a Form I-290B, Notice of Appeal or Motion. The application indicated that it was filing a combined motion to reopen and reconsider the CIS decision. (CAR at 16-17.) The accompanying letter requested that if the motion was denied, CIS forward the appeal to the appropriate agency. (CAR at 18.)

18. In support of its position, Tri-V supplemented its evidence by submitting: (1) a list of the job duties performed by Guico, as well as a those performed by the other employees (CAR at 40-42); (2) copies of personnel records from the California Health and Welfare Agency (CAR at 44-55); and (3) amended federal and state tax forms, with statements from the tax preparer indicating that she had inadvertently omitted the shareholders' information (CAR at 57-71).

19. On December 5, 2007, the matter was forwarded to the Administrative Appeals Office ("AAO"). (CAR at 1.)

20. At the AAO, Defendants considered the information contained in the administrative record, as well as the supplemental information submitted with Tri-V's Form I-290B. (CAR at 5-6, 10-12.)

21. On May 20, 2008, Defendants issued its decision dismissing the appeal. Defendants' decision was made on three independent bases: (1) Tri-V had failed to establish that Guico would primarily perform managerial or executive duties; (2) Tri-V had failed to provide evidence that it had a qualifying relationship with the foreign employer (i.e., Tri-V Marketing); and (3) Tri-V had failed to establish that Guico's overseas position was primarily managerial or executive in nature. (CAR 4- 14.)

**B.  Conclusions of Law**

Plaintiffs challenge Defendants' denial of Tri-V's Petition.  The Court finds that Defendants did not abuse their discretion in denying Tri-V's request because Plaintiffs failed to adequately show that: (1) Guico would be employed by Tri-V in a primarily managerial or executive capacity; (2) Guico was employed by Tri-V Marketing for at least one continuous year in a managerial or executive position; and (3) Tri-V and Tri-V Marketing were qualifying organizations.

1.  *Jurisdiction*

According to the Administrative Procedure Act ("APA"), a person may seek legal review of an agency action except to the extent statutes preclude judicial review or the agency action is committed to agency discretion by law. 5 U.S.C. § 701(a). If the statute contains judicially manageable standards for judging how and when an agency should exercise its discretion, the agency action is reviewed to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.*

8 U.S.C. § 1184 permits admission into the United States any alien as a nonimmigrant, including those who apply for nonimmigrant status under 8 U.S.C. § 1101(a)(15)(L). The denial of such applications are subject to the jurisdiction of the district courts. *See Brazil Quality Stones v.* Chertoff, 531 F.3d 1063, 1066 (9th Cir. 2008).

2. _Standard of Review_

Under the APA, a district court may set aside an agency decision if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ." 5 U.S.C. § 706(2)(A). This is a deferential standard, under which a district court will reverse the agency's decision only if it violated the law or committed a clear error in judgment. _See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc._, 419 U.S. 281, 281 (1974). Under the APA, review is limited to the administrative record of the proceedings below. _Tongatapu Woodcraft Hawaii, Ltd. v. Feldman_, 736 F.2d 1305, 1308 (9th Cir. 1984).

3. _Discussion_

8 U.S.C. § 1184(a) permits the admission into the United States any alien as a nonimmigrant "for such time and under such conditions as the Attorney General may by regulations prescribe." One such class of nonimmigrant alien is the L-1, which is described as "an alien who, within 3 years preceding the time of his application . . . has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer of a subsidiary or affiliate thereof in a capacity that is managerial, executive . . . ." 8 U.S.C. § 1101(a)(15)(L). The burden of proving eligibility for this immigration benefit rests with the applicant or petitioner to show by a

preponderance of the evidence. 8 U.S.C. § 1361.

Plaintiffs' initial application for L-1 status had been approved by CIS with a validity date from May 15, 2006 through May 14, 2007.[1] However, on November 5, 2007, CIS denied Plaintiffs' application for extension of the L-1 visa. The matter was then forwarded to the AAO. The Administrative Record shows that Defendants properly reviewed the information contained in the Petition (Findings of Fact ("FOF") Nos. 7, 9 and 10), as well as the information submitted in response to CIS's RFE (FOF Nos. 13, 14 and 15). Additionally, Defendants considered further documentation ("Supplemental Documents") submitted by Tri-V in conjunction with its Form I-290B. (FOF No. 18.) On May 20, 2008, Defendants dismissed the appeal. (FOF No. 21.)

As a threshold issue, Plaintiffs argue that they timely filed a Motion to Reopen/Reconsider with CIS. Therefore, Plaintiffs argue that Defendants should have considered the motion and supporting supplemental evidence before forwarding the matter to the AAO for consideration on appeal. Plaintiffs contend that, in light of this error, the Court should remand the Petition to CIS for consideration of the supplemental evidence.

Plaintiffs also argue that Defendants erroneously dismissed the

---

[1] CIS also granted the Guico Family's application for L-2 status with the same validity dates. As stated in Finding of Fact No. 6, because the Guico Family status is dependent upon Guico's status, determination of Guico's status directly bears on the Guico Family status. Although the Court's discussion and decision will apply to both Guico and the Guico Family, the Court will hereinafter refer only to Tri-V's application made on behalf of Guico.

1  appeal. Specifically, Plaintiffs contend that the evidence submitted
2  by them: (1) establishes Guico as an executive; (2) shows that Guico
3  had been employed as an executive by Tri-V Marketing within the
4  relevant time frame; and (3) demonstrates that Tri-V and Tri-V
5  Marketing were qualifying organizations.

6

7      For the following reasons, the Court disagrees and finds that
8  Defendants did not abuse their discretion in dismissing Plaintiffs'
9  appeal.

10

11      a.   *Defendants Did not Abuse Their Discretion by Treating the*
12           *Matter as an Appeal*

13

14      The regulations prescribe procedures for both appeals and
15  requests to reopen or reconsider unfavorable decisions. 8 C.F.R. §§
16  103.3 ("Section 103.3") and 103.5. It appears that Defendants treated
17  Tri-V's Form I-290B as an appeal.

18

19      On the Form I-290B, Tri-V checked the box indicating a request to
20  reopen or reconsider. (CAR at 16.) However, in its accompanying brief,
21  Tri-V expressly asks CIS to reopen the case, or "[i]n the alternative,
22  if the motion is denied then please forward the appeal to the
23  appropriate agency." (CAR at 18.) Moreover, Section 103.3, which
24  governs appeals, states the following: (1) the official who made the
25  unfavorable decision being appealed must first review the appeal (8
26  C.F.R. § 103.3(a)(2)(ii)); (2) if the official decides to take
27  favorable action, he may treat the appeal as a motion to reopen or
28  reconsider and take such action (8 C.F.R. § 103.3(a)(2)(iii)); and (3)

if the official decides not to take favorable action, he shall promptly forward the appeal and the related administrative record to the appellate body (8 C.F.R. § 103.3(a)(2)(iv)). The procedures specified in Section 103.3 mirror the procedures expressly requested by Tri-V.

In light of Tri-V's request to forward the appeal to the appropriate agency if the motion is denied, as well as Section 103.3(2), which specifies the same procedure requested by Plaintiffs, the Court finds that Defendants did not clearly err in treating the application as an appeal. The evidence shows that, having treated the application as an appeal, Defendants complied with the relevant regulations. Therefore, the Court finds that Defendants did not abuse their discretion in forwarding the matter to the AAO for consideration on appeal.

b.   *Defendants Did not Abuse Their Discretion by Dismissing the Appeal*

Defendants dismissed Tri-V's appeal on the following grounds: (1) Tri-V failed to establish that Guico had been employed by Tri-V Marketing in a managerial or executive capacity, and would be employed by Tri-V in a primarily managerial or executive capacity; and (2) Tri-V failed to provide evidence that Tri-V and Tri-V Marketing were qualifying organizations. (FOF No. 21.) The Court addresses each ground for dismissal in turn.

i.   *Managerial or Executive Duties*

To qualify for L-1 classification, the alien beneficiary must have been continuously employed in a managerial or executive capacity by an overseas entity for one year within the three years prior to the alien's application for admission to the United States. *See* 8 U.S.C. §1101(a)(15)(L). Additionally, the alien beneficiary must be transferring to the United States entity to work primarily in a managerial or executive capacity for that U.S. entity. *Id*. The burden of establishing these requirements is on the alien beneficiary and his employer. *See Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1069 (9th Cir. 2008).

According to the statute, the term "managerial capacity" means that the employee primarily: (1) manages the organization or a component of the organization; (2) supervises or controls the work of other supervisory, professional or managerial employees, or manages an essential function within the organization; (3) has the authority to hire and fire or recommend employees over which he directly supervises; and (4)exercises discretion over the day-to-day operations of the activity or function for which the he has authority. *See* 8 U.S.C. § 1101(a)(44)(A). The term "executive capacity" means the employee primarily: (1)directs the management of the organization or a major component or function of the organization; (2) establishes the goals and policies of the organization, component, or function; (3) exercises wide latitude in discretionary decision-making; and (4) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization. *See* 8 U.S.C. § 1101(a)(44)(B).

1     Upon review of the Administrative Record, the Court finds that
2  Defendants did not abuse their discretion by dismissing the appeal for
3  failure to establish the managerial or executive requirement.

4

5     The Regulations require a "detailed description of the services
6  to be performed" by the employee. 8 C.F.R. § 214.2(1)(3)(ii). Evidence
7  in the record shows that the information initially provided fell far
8  short of the standard prescribed by the Regulation. (*See* FOF Nos. 7
9  and 10.) Therefore, CIS requested further information about Guico's
10 executive position at Tri-V and Tri-V Marketing, including a more
11 detailed job description and the percentages of time spent on each job
12 duty. (FOF No. 12.) While Tri-V submitted additional information,
13 Defendants ultimately found that the information lacked sufficient
14 specificity and documentary evidence. (CAR 7 and 13.) Upon review of
15 the relevant information, the Court agrees, and finds that the
16 descriptions fail to indicate Guico's day-to-day duties and
17 responsibilities. Moreover, the Record clearly shows that Tri-V never
18 provided information regarding percentages of time spent on each job.
19 As stated by the Regulations, "[where an applicant or petitioner does
20 not submit all requested additional evidence and requests a decision
21 based on the evidence already submitted, a decision shall be issued
22 based on the record. Failure to submit requested evidence which
23 precludes a material line of inquiry shall be grounds for denying the
24 application or petition." 8 C.F.R. § 103.2(b)(14). The Court finds
25 that the failure to provide the specific information requested
26 precludes a material line of inquiry. In light of the foregoing, the
27 Court finds that Plaintiffs have failed to meet their burden of
28 showing that Guico's responsibilities at Tri-V and Tri-V Marketing

1  were primarily managerial or executive.

2

3          ii. *Qualifying Relationship With Foreign Employer*

4

5      The implementing regulations require an L-1A petitioner to submit

6  evidence establishing that the petitioner and the organization from

7  which the foreign national will be transferring are "qualifying

8  organizations."[2] 8 C.F.R. § 214.2(l)(3)(i). A qualifying organization

9  is a parent, branch, subsidiary or affiliate of an overseas legal

10 entity that is currently doing business outside the United States. *See*

11 8 C.F.R. § 214.2(l)(1)(ii)(G). "Subsidiary" is defined in pertinent

12 part as a corporation "of which a parent owns, directly or indirectly,

13 more than half of the entity and controls the entity." 8 C.F.R. §

14 214.2(l)(1)(ii)(K).

15

16     According to the Petition, Tri-V Marketing and Tri-V are

17 qualifying organizations by virtue of Tri-V Marketing's status as a

18 Philippines company and its 70% ownership of Tri-V. (FOF Nos. 9 and

19 10.) Plaintiffs' primary supporting evidence are: (1) a November 2004

20 stock certificate; (2) a November 2004 bank statement showing a

21 $10,000 deposit into Tri-V's account; and (3) a copy of Tri-V's 2006

22 Form 1120-A U.S. Corporation Short-Form Income Tax Return ("Tax

23 Return"). (FOF Nos. 10 and 14.)

24

25     [2] At the time Guico's L-1A visa was initially granted, Tri-V
   had been designated a "new office" because it had not been
26 conducting business in the United States for more than one year.
   *See* 8 C.F.R. § 214.2(l(1)(ii)(F). When a "new office" files for
27 an L-1A extension, it must show continuation of a qualifying
   organization with an overseas entity. 8 C.F.R. §
28 214.2(l)(14)(ii)(A).

1    The Court's review of the Administrative Record shows that Tri-
2  V's supporting evidence is weak and contradictory. First, a stock
3  certificate alone, does not sufficiently establish that Tri-V
4  Marketing maintains ownership *and* control over Tri-V.[3]

5

6    Second, the bank statement fails to indicate from where the
7  $10,000 originated. (*See* CAR at 125.) In its Response to the RFE, Tri-
8  V failed to produce any of the specific evidence requested by CIS.
9  Instead, Tri-V submitted a letter stating that Tri-V Marketing sent
10 cash with Guico and his wife on a trip to the United States to
11 purchase Tri-V stock. The Administrative Record clearly shows that
12 Defendants considered this evidence. (FOF No. 20.) However, Defendants
13 found this evidence not credible. (*See* CAR at 12.) In light of Tri-V's
14 failure to submit any other evidence on this matter, the Court agrees
15 with Defendants and finds that the bank statement fails to establish
16 that Tri-V Marketing purchased the 70% interest in Tri-V.

17

18   Finally, Tri-V's 2006 Tax Return contradicts Tri-V's assertion
19 that it is a qualifying organization. First of all, the Tax Return
20 indicates that no single individual or entity owns more than 50% of
21 Tri-V's stock. (CAR at 357.) Moreover, the Tax Return fails to assign
22 a value to Tri-V's common stock. *Id.* Second, the tax form used by Tri-
23 V is prohibited for use by a corporation having foreign shareholders

24 _____

25   [3] Defendants state, and the Court agrees, that items such as
   corporate stock certificate ledgers, stock certificate registry,
26 corporate bylaws, and minutes of relevant annual shareholder
   meetings must be examined to determine the total number of shares
27 issued, the exact number issued to the shareholder, and the
   subsequent percentage ownership and its effect on corporate
28 control. (*See* CAR at 10.) Plaintiffs submitted none of these
   documents.

1   that own 25% or more of its stock. *See* 2006 IRS Form 1120-A

2   (instructions) at 2. As part of its Supplemental Documents, Tri-V

3   included an amended tax return, and an explanation by the tax preparer

4   stating that shareholders' information had been inadvertently omitted.

5   (FOF No. 18.) However, as stated by Defendants, this document does not

6   resolve the underlying inconsistency, as it fails to explain why a

7   form that was inappropriate for use by a foreign-owned corporation was

8   used in the first place. (*See* CAR at 12.) Moreover, based on the

9   timing of the amended tax return, it does not carry significant

10  evidentiary weight and instead, raises serious questions regarding the

11  truth of the facts asserted.

12

13       In light of the discussion above, the Court agrees that the

14  record is not persuasive in establishing that Tri-V and Tri-V

15  Marketing are qualifying organizations. Therefore, the Court finds

16  that Defendants did not abuse their discretion in dismissing the

17  appeal on this ground.

18

19       Based on the foregoing, the Court concludes that under the APA,

20  Plaintiffs have failed to show that CIS's decision to deny Plaintiffs'

21  Petition is arbitrary, capricious, an abuse of discretion, or

22  otherwise not in accordance with law.

23

24

25

26

27

28

1  III. **CONCLUSION**

2

3          The Court grants judgment in favor of Defendants.

4

5

6

7  **July 29, 2009**                              _____
   Date                                          R. Gary Klausner

8                                                 U.S. District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28